**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Billy Lee ARLEN, Defendant–Appellant.**

**No. 90–2746.**

United States Court of Appeals,
Fifth Circuit.

Oct. 31, 1991.

George McCall Secrest, Jr., Houston, Tex., for defendant-appellant.

Andrew Clark, Atty., Dept. of Justice, Washington, D.C., Paula Offenhauser, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN, DAVIS, and BARKSDALE, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Billy Lee Arlen pled guilty to charges that he conspired to sell and actually sold steroids in violation of 18 U.S.C. § 371 and 21 U.S.C. §§ 331(a), 333(b). Arlen conditioned his plea, however, on his ability to appeal the district court's interpretation of § 333(b) and the constitutional sufficiency of his indictment. In this appeal Arlen complains primarily that the district court erred in holding that the government could establish § 333(b)'s requirement of "intent to defraud or mislead" by showing that he

misled a government agency rather than the purchaser of the drugs. We affirm.

## I.

Arlen is a competitive body builder who for years used anabolic steroids. From 1985 through April 1988 Arlen maintained a part-time business of buying, selling, and trading steroids through the mail. The district court found that Arlen's sales to users and other dealers totalled $120,000.

Arlen was careful to avoid having his name associated with the sale of steroids. Arlen conducted all sales and purchases of steroids in cash or blank money orders; he maintained no records of his steroid dealings; he rented a private postal box under a fictitious name to receive steroids and steroid orders; and he used fictitious names and return addresses when sending steroids to customers and suppliers.

In March 1988, agents of the U.S. Food and Drug Administration (FDA) made a controlled purchase, through a cooperating witness, of six different steroids from Arlen. The government executed search warrants in April 1988 and seized additional evidence. Arlen then consented to an interview with government agents, during which he made numerous admissions concerning his illegal steroid business.

In November 1989, a federal grand jury returned an eight-count indictment against Arlen. The indictment alleged that Arlen had conspired to commit offenses against the United States, in violation of 18 U.S.C. § 371 (Count 1); [1] used a fictitious name to conduct an unlawful business by means of the postal service, in violation of 18 U.S.C. § 1342 (Counts 2–3); and distributed in interstate commerce, "with the intent to defraud and mislead," misbranded prescription drugs, in violation of 21 U.S.C. §§ 331(a) [2] and 333(b) [3] (Counts 4–8). In May 1990, the district court ruled that the government could satisfy the specific intent required by § 333(b) by proof that defendant had purposefully evaded the regulatory requirements of the FDA. Arlen pled guilty to Counts 1 and 8 the next day. He conditioned his plea, however, on his right to appeal the district court's pretrial ruling on the proof necessary to satisfy § 333(b)'s "intent to defraud or mislead" requirement. Relatedly, he also reserved the right to appeal the district court's conclusion that the indictment passed constitutional muster.

At sentencing in August 1990, the district court announced an upward departure from the Sentencing Guidelines and on each count sentenced Arlen to twelve months imprisonment and three years of supervised release, to run concurrently, and a fine of $25,000. Arlen timely appealed.

## II.

Arlen argues first that the district court erred in concluding that the government could establish § 333(b)'s "intent to defraud or mislead" requirement by show-

---

1. Section 371 provides that:

 If two or more persons conspire either [1] to commit any offense against the United States, or [2] to defraud the United States, or any agency thereof in any manner or for any purpose, ... each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

 18 U.S.C. § 371 (1966).

2. Section 331 provides that:

 The following acts and the causing thereof are prohibited:
 (a) The introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded.

 21 U.S.C. § 331 (1972). Steroids are prescription drugs because they are unsafe for humans without the supervision of a licensed practitioner. § 353(b)(1)(B). Any prescription drug that is dispensed without a prescription is deemed "misbranded" as a matter of law. § 353(b)(1).

3. Section 333 provides that:

 (a) Any person who violates a provision of section 331 of this title shall be imprisoned for not more than one year or fined not more than $1,000, or both.
 (b) Notwithstanding the provisions of subsection (a) of this section, if any person commits such a violation after a conviction of him under this section has become final, or *commits such a violation with the intent to defraud or mislead,* such person shall be imprisoned for not more than three years or fined not more than $10,000, or both.

 21 U.S.C. § 333 (1982) (emphasis added).

ing Arlen's intent to mislead a government agency. Because the issue is one of statutory interpretation, we review the district court's ruling de novo. *In re Exquisito Services, Inc.*, 823 F.2d 151, 152 (5th Cir. 1987).

Section 333 of the Federal Food, Drug, and Cosmetic Act (the Act), provides the penalties for all violations of section 331. Section 333(a) provides a misdemeanor penalty for those who violate § 331 without an intent to "defraud or mislead":

> (a) Any person who violates a provision of section 331 of this title shall be imprisoned for not more than one year or fined not more than $1,000, or both.

Section 333(b), on the other hand, provides a more severe felony penalty for persons who violate § 331 with intent to "defraud or mislead":

> (b) Notwithstanding the provisions of subsection (a) of this section, if any person commits such a violation after a conviction of him under this section has become final, or *commits such a violation with the intent to defraud or mislead,* such person shall be imprisoned for not more than three years or fined not more than $10,000, or both.

21 U.S.C. § 333 (1982) (emphasis added).[4] Critically, however, the statute does not specify *who* must be defrauded or misled to trigger the felony provisions of § 333(b). The district court held that the government could satisfy this requirement of § 333(b) by establishing that Arlen had the intent to defraud or mislead a government regulatory agency. Arlen argues that this interpretation is incorrect because the felony provisions of § 333(b) are triggered only if a defendant defrauds or misleads his purchaser.

Although we have not previously decided this question, three other circuits have, and all three have agreed with the government's position here. *See United States v. Bradshaw*, 840 F.2d 871 (11th Cir.), *cert. denied*, 488 U.S. 924, 109 S.Ct. 305, 102 L.Ed.2d 324 (1988); *United States v. Mitcheltree*, 940 F.2d 1329 (10th Cir.1991);

*United States v. Cambra*, 933 F.2d 752 (9th Cir.1991). In *Bradshaw*, the defendant conducted a wholesale steroid drug business. He took careful steps to avoid detection, including moving from state to state, using mail drops, using false names, and mislabeling packages. At Bradshaw's trial, the trial judge instructed the jury that it could convict Bradshaw of a § 333(b) violation if it found that he intended to defraud or mislead a government agency. On appeal, the Eleventh Circuit examined the section's language, legislative history, and the Act's overall purpose, and upheld the instruction. It concluded that "Congress meant to encompass conduct intended to defraud government enforcement agencies." *Id.* at 874. We find the Bradshaw court's reasoning persuasive.

The government's interpretation of § 333(b) is consistent with the structure of the statute. As previously discussed, section 333(a) provides that anyone who violates a provision of § 331 commits a misdemeanor. Section 333(b) provides that anyone who does so with "intent to defraud or mislead" commits a felony. Several of the twenty acts § 331 proscribes concern only the government. *See* 21 U.S.C. § 331(e) (failure to permit FDA access to records and failure to make reports to the FDA); § 331(f) (refusal to permit FDA inspection); § 331(p) (failure to register with the FDA). As the *Bradshaw* court noted, "[a]fter reading these sections with § 333, it is clear that the FDA is the entity most likely to be defrauded under these provisions." *Bradshaw*, 840 F.2d at 874. Arlen's interpretation of § 333(b), that the government cannot be a defrauded or misled victim, would lead to the conclusion that there could never be a felonious violation of §§ 331(e), (f), or (p). Such a result would be contrary to the plain inclusive language of § 333(b), which contemplates both misdemeanor and felony violations for all § 331 offenses.

Arlen relies on our previous decision in *United States v. Haga*, 821 F.2d 1036 (5th Cir.1987). In *Haga*, however, we did not confront whether the felony provision of

---

**4.** These provisions are now codified as 21 U.S.C. §§ 333(a)(1) and (a)(2) (1988), respectively.

§ 333(b) is triggered when a defendant defrauds a government agency rather than a purchaser of drugs, and said so explicitly. *Id.* at 1044 n. 17. Rather, *Haga* was a "variance" case and we held only that the district court committed reversible error by convicting the defendant of a prong of the federal conspiracy statute for which he had not been indicted. *Id.* at 1044–46. No such variance occurred here.[5]

In dicta, however, the *Haga* court did question whether the government could establish a § 333(b) violation by showing that the defendant defrauded or misled a government agency. The *Haga* court noted:

> we observe that the theory would as a practical matter have the effect of rendering the "defraud and mislead" language of section 333(b) mere surplusage in the prosecution of any defendant charged with a conscious (and not publicly proclaimed) violation of section 331— only inadvertent (or publicly announced) violations of section 331 would be misdemeanors, because all conscious (and not publicly confessed) violations would necessarily involve a deliberate evasion of established regulatory systems.

*Haga*, 821 F.2d at 1044 n. 17. The concern is that Congress did not intend to punish all willful violations of § 331 as felonies.

We agree with the government that this result will not follow. While every conscious or willful violation of § 331 will carry a misdemeanor penalty, it will not always subject the violator to a felony sentence. To subject the defendant to a felony sentence requires the government to establish not only that the violation was willful but that it was committed with the specific intent to defraud or mislead an identifiable government agency. See *United States v. Mitcheltree*, 940 F.2d 1329, 1349 (10th Cir.1991).

For example, an operator of a drug storage facility must permit inspection of his premises when FDA personnel present him with proper credentials and written notice of inspection. If the operator refuses to permit the inspection of his facility because he feels it is an inconvenient time for an inspection, he has committed a willful violation of § 331(f) (failure to permit inspection by FDA), even if his facility fully complies with all FDA regulations. This violation would be punished as a misdemeanor under § 333(a). If, however, the operator refuses to permit inspection because he wants time to clean up his contaminated facility, he has willfully violated § 331(f) with the intent to defraud or mislead the government. This violation would be punished as a felony under § 333(b). Thus we are persuaded that adopting the government's theory will not lead to felonious convictions for all willful violations.

We therefore join our sister circuits' interpretation of § 333(b) and hold that the government's evidence is sufficient to make out a violation of this section where it shows that the defendant intentionally violated § 331 with the specific intent to defraud or mislead an identifiable government agency. *Bradshaw*, 840 F.2d at 874; *Mitcheltree*, 940 F.2d at 1349; *United States v. Cambra*, 933 F.2d 752, 755 (9th Cir.1991).

■ Here, Arlen's actions went beyond mere willfulness and constituted active deception of the FDA. He was careful not to

---

5. Like Arlen, Haga was indicted for conspiring to commit offenses against the United States (in violation of 18 U.S.C. § 371), and for substantive violations of selling steroids (in violation of 21 U.S.C. §§ 331(a), 333(b)). Also similarly, the government in Haga proceeded on a defrauding-the-government theory for the § 333(b) violations. After a bench trial, the district court convicted Haga of a felony conspiracy charge under 18 U.S.C. § 371 and three misdemeanor substantive offenses under 21 U.S.C. § 333(a). Haga was not convicted of a felony under § 333(b).

In reversing Haga's conviction we interpreted the conspiracy statute (§ 371), not the substantive provisions of §§ 331 and 333. See note 1 for the text of 18 U.S.C. § 371. Haga was indicted for *conspiring to commit an offense against the United States* (the first prong), but convicted for *conspiring to defraud the United States* (the second prong). *Haga*, 821 F.2d at 1037, 1044–45. This was reversible error.

Although Arlen contended before the district court and in his brief to this court that his conspiracy conviction was also at variance with his indictment, he conceded at oral argument that this was not so.

generate or maintain any records of his steroid dealings. He even stopped accepting blank money orders because "every time you cash them, there's a record." He rented a private postal box under a fictitious name, and used phony names and addresses when mailing steroid packages. These were active steps taken to avoid detection and regulation by the FDA. The district court correctly concluded that the government's proof of Arlen's intent to defraud a government agency could establish a violation of § 333(b).

### III.

Arlen next argues that the district court's interpretation of § 333(b) constructively amended the indictment. He also contends that the indictment is constitutionally insufficient. We address each argument in turn.

### A.

 Arlen contends first that the district court constructively amended Count 8 of the indictment by permitting the prosecution to proceed on a defrauding-the-government theory when the indictment does not allege that theory.

The Fifth Amendment guarantees that a criminal defendant will be tried only on charges alleged in a grand jury indictment. The indictment cannot be "broadened or altered" except by the grand jury. *United States v. Chandler,* 858 F.2d 254, 256 (5th Cir.1988), citing *Stirone v. United States,* 361 U.S. 212, 215–17, 80 S.Ct. 270, 272–73, 4 L.Ed.2d 252 (1960). A constructive amendment occurs when the trial court "through its instructions and facts it permits in evidence, allows proof of an essential element of a crime on an alternative basis permitted by the statute but not charged in the indictment." *United States v. Slovacek,* 867 F.2d 842, 847 (5th Cir.), *cert. denied,* 490 U.S. 1094, 109 S.Ct. 2441, 104 L.Ed.2d 997 (1989). See, e.g., *United States v. Mize,* 756 F.2d 353 (5th Cir.1985). Here the factual predicate of the indictment is identical to that of the conviction: distribution of misbranded drugs with in-tent to defraud and mislead. No constructive amendment occurred. *United States v. Young,* 730 F.2d 221, 224 (5th Cir.1984).

We also find no merit to Arlen's argument that a variance exists between the proof and the indictment. Count 8 of the indictment tracks the language of the statute and alleges an intent to defraud or mislead; it simply does not specify who was defrauded or misled. By producing evidence that Arlen intended to defraud or mislead the government, the prosecution would not vary from the indictment's charges. The indictment alleges that Arlen defrauded or misled someone; the proof would have specified whom that was.

### B.

 Arlen next challenges the sufficiency of the indictment. He contends that Counts 1 and 8 are constitutionally insufficient because they fail to identify the defrauded or misled victim or to notify him of the government's theory that the victim was a government agency.

As discussed above, the Fifth Amendment guarantees that a criminal defendant will be tried only on charges alleged in a grand jury indictment. The Sixth Amendment, in turn, requires that the indictment inform the defendant of the nature of the charges against him. An indictment is sufficient if (1) it contains the elements of the offense charged, (2) it "fairly informs" the defendant of the charge he must meet, and (3) there is no risk of future prosecutions for the same offense. *United States v. Gordon,* 780 F.2d 1165, 1169 (5th Cir.1986), citing *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590, 620 (1974). Because Arlen does not argue that he risks double jeopardy, we need consider only the first two requirements.

Arlen argues that Count 8 is insufficient because it gives no hint that the grand jury thought that Arlen had defrauded or misled the government rather than his purchaser. The indictment tracks the lan-

guage of the statute.[6] The Count on its face does not specify that Arlen committed his offenses with the intent to defraud or mislead the government. But neither could Arlen reasonably have read this Count as charging him with defrauding the purchaser of the drugs. The indictment is silent as to the identity of the defrauded or misled victim.

An indictment that tracks a statute's words is generally sufficient "as long as those words fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *United States v. London*, 550 F.2d 206, 210 (5th Cir.1977). "In other words, the language of the statute may guarantee sufficiency if all required elements are included in the statutory language." *Gordon*, 780 F.2d at 1171.

The elements of a § 333(b) violation are (1) a violation of § 331, (2) committed by a repeat offender or by someone "with the intent to defraud or mislead." The prosecution must prove beyond a reasonable doubt that a defendant intended to defraud or mislead someone, but the indictment need not specify the intended victim; the focus is on defendant's intent, not the victim's identity. See *United States v. Hatch*, 926 F.2d 387 (5th Cir.), cert. denied, — U.S. —, 111 S.Ct. 2239, 114 L.Ed.2d 481 (1991) (indictment for mail fraud, which requires proof of "any scheme or artifice to defraud," is sufficient even if it fails to define the victim); *United States v. Mizyed*, 927 F.2d 979 (7th Cir.), cert. denied, — U.S. —, 111 S.Ct. 2065, 114 L.Ed.2d 470 (1991) (same). Similarly, the indictment is not insufficient because it fails to identify the means of deceit. *London*, 550 F.2d at 208 (indictment for concealment of material fact by "trick, scheme, or device" not insufficient for failure to specify the precise trick, scheme, or device allegedly used).

Arlen points us to the indictment in *Haga* as an example of a sufficient indictment. That indictment indeed identified the specific government agencies the defendant was charged with defrauding. *Haga*, 821 F.2d at 1042. But "[t]he test is not whether the indictment might have been drawn with greater certainty and exactitude, but rather whether it set forth the elements of the offense charged and sufficiently apprised defendants of the charges. The validity of the indictment must be determined by practical, not technical, considerations." *London*, 550 F.2d at 211 (citation omitted). *Haga* does not establish a base line for required details in an indictment. Count 8 of Arlen's indictment was sufficient to give him adequate notice of the charges.[7] Be-

---

**6.** Count 8 of the indictment alleges:

2. On or about the dates listed below, within the Southern District of Texas, defendant BILLY LEE ARLEN, with the intent to defraud and mislead, did introduce and deliver and cause to be introduced and delivered for introduction into interstate commerce from Houston, Texas, to the below-listed locations, quantities of prescription drugs, namely steroids as labeled below, which drugs, when introduced and delivered for introduction into interstate commerce, were misbranded within the meaning of Title 21, United States Code, Section 353(b)(1)(B), in that the drugs were dispensed by defendant without a prescription from a practitioner licensed by law to administer such drugs, each such instance as listed below being a separate count of this Indictment:

| COUNT | DATE | DRUG | RECIPIENT |
| --- | --- | --- | --- |
| 8 | 3/8/88 | Nandrolone Decanoate | Joey Alexander (Starkville, MS) |

(Violation: Title 21, United States Code, Sections 331(a) and 333(b), and Title 18, United States Code, Section 2).

(emphasis added).

**7.** Arlen, understandably, wants the government to disclose its theory of the case and the supporting evidentiary facts. "That is not and never has been required at the indictment stage.... The ready remedy of a motion for a bill of particulars [under Fed.R.Crim.P. 7(f) ] is available to add specifics beyond those required for the indictment to pass constitutional muster...." *United States v. Hajecate*, 683 F.2d 894, 898 (5th Cir.1982), cert. denied, 461 U.S. 927, 103 S.Ct. 2086, 77 L.Ed.2d 298 (1983). Here, the indictment "taken as a whole ... adequately apprised [Arlen] of the charges so that [he]

cause Arlen offers no independent reason why Count 1 is insufficient, the above discussion disposes of Arlen's argument on Count 1 as well.

## IV.

◼ Arlen next contends that his guilty plea is invalid because the district court did not advise him fully of the effects of supervised release.

At Arlen's plea hearing, the district court explained to him that any sentence of imprisonment would be followed by three years of supervised release in "which you would have to report to a probation officer and follow certain conditions of probation." After an off-the-record discussion between Arlen and his counsel, Arlen indicated that he understood. We held in *United States v. Tuangmaneeratmun*, 925 F.2d 797 (5th Cir.1991), that the district court must fully inform the defendant at his plea hearing of the prospect of receiving a period of supervised release and the consequences of violating the terms of that release. But unless the district court "totally fails" to address supervised release, a reviewing court will reverse only if the error is not harmless. *Id.* at 804. Although the district court did not advise Arlen that he would face additional imprisonment if he violated the conditions of supervised release, the court did not totally fail to address the subject of supervised release. Thus Arlen must "demonstrate that he was prejudiced, i.e., that the district court's failure to explain the effect of supervised release caused him to plead guilty when he would not have otherwise done so." *Id.*

Arlen has not met this burden. He was willing to plead guilty with the prospect of receiving a substantial jail sentence. Arlen has not explained why knowledge of all the requirements attendant to supervised re-

might prepare a defense." *London,* 550 F.2d at 208.

Arlen did not request a bill of particulars on this issue, nor even move to quash the indictment; instead, he pled guilty. While not conclusive, this further indicates that the indictment was sufficient. In addition, Arlen admits that he had read the *Bradshaw* opinion well in advance of his plea. The defrauding-the-government theory was not a surprise.

lease would have caused him to go to trial rather than enter a plea.

## V.

◼ Finally, Arlen maintains that the district court erred in departing upward from the Sentencing Guidelines on his § 333 violation. Arlen's violation of § 333 was addressed by U.S.S.G. § 2N2.1, "Violations of Statutes and Regulations Dealing With Any Food, Drug, Biological Product, Device, Cosmetic, or Agricultural Product." The district court concluded that, when fashioning § 2N2.1, the United States Sentencing Commission had not considered factors appropriate to a conviction for trafficking in steroids with the intent to defraud or mislead; accordingly, the district court departed from § 2N2.1 and applied the guideline for fraud, § 2F1.1, instead. As we explain below, it was unnecessary for the district court to depart and we need not consider whether a departure was appropriate.

The commentary to § 2N2.1 provides that "[i]f the offense involved theft, *fraud,* bribery, revealing trade secrets, or destruction of property, apply the guideline applicable to the underlying conduct, rather than this guideline." U.S.S.G. § 2N2.1, Commentary, Application Note 2 (Nov. 1988) (emphasis added). Arlen was convicted of an offense involving intent to defraud or mislead. The district court specifically found that "[i]n addition to being an element of the offense, fraud was a factual matter, defining characteristic, of both specific nature of defendant's conduct and the black market world in which he conducted his illicit steroid business." Thus the district court properly applied the § 2F1.1 fraud guideline, rather than § 2N2.1, for the violation of § 333.[8] Another court has already approved such an application.

8. We note that under the current version of the Guidelines, sentencing courts are directed to § 2F1.1 for violations of § 333(b) (now codified as § 333(a)(2)). United States Sentencing Commission, *Guidelines Manual,* Appendix A (Nov. 1, 1990). This provision, however, is inapplicable to the case sub judice.

*United States v. Cambra,* 933 F.2d 752, 755 (9th Cir.1991). Applying the fraud guideline for a violation of § 333(b) is a direct application of the Guidelines, rather than a departure from them, and leaves Arlen without a basis for objection.

■ Arlen also contends that his sentence was disproportionately high when compared to the sentences received by other, more-culpable coconspirators. The district court sentenced Arlen to 12 months, well within the 10–16 month guideline range. Arlen cannot attack his own guideline range sentence based upon the sentences of his coconspirators. *United States v. Pierce,* 893 F.2d 669, 678 (5th Cir.1990).

Accordingly, the judgment of the district court is

AFFIRMED.