**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lindley T. GEBORDE, aka Seal A, Defendant–Appellant.**

**No. 00–50000.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 2001.

Filed Jan. 24, 2002.

Michael Tanaka, Deputy Federal Public Defender, Los Angeles, CA, for the defendant-appellant.

Kenneth Jost, Assistant Director (argued), Sara Anjargolian, Trial Attorney, U.S. Department of Justice, Office of Consumer Litigation, Washington, DC, for the plaintiff-appellee.

Before: PREGERSON, REINHARDT and SILVERMAN, Circuit Judges.

SILVERMAN, Circuit Judge:

Defendant Lindley Geborde manufactured and gave away to several teenagers a home-made designer drug called gamma hydroxy butyrate, commonly known as GHB. Geborde's concoction killed one of the teenage boys who drank the stuff. Geborde was convicted of manslaughter in state court and sentenced to prison. The present case involves the efforts of federal authorities to prosecute Geborde on drug charges arising out of the same events. Although GHB is now a controlled substance as defined by federal law, it wasn't at the time, and therefore, wasn't covered by the usual federal statutes dealing with illegal drugs. Unable to bring a conventional drug case, the government charged Geborde with various violations of the Food, Drug, and Cosmetic Act ("FDCA"), a regulatory scheme administered by the

Food and Drug Administration. The problem is that the FDCA was not designed to deal with the wholly gratuitous distribution of homemade substances. We now have to decide whether the square pegs of Geborde's conduct can be pounded into the round holes of the FDCA.

Geborde was convicted of one count of operating an unregistered drug manufacturing facility with the intent to defraud or mislead in violation of 21 U.S.C. §§ 331(p), 333(a)(2); and seven counts of misbranding of drugs held for sale after receipt in interstate commerce, with the intent to defraud or mislead, in violation of 21 U.S.C. §§ 331(k), 333(a)(2).

Geborde concedes that the government proved that he operated an unregistered drug manufacturing facility in violation of 21 U.S.C. § 331(p). A violation of 21 U.S.C. § 331(p) is a misdemeanor unless the failure to register is committed with the intent to defraud or mislead, in which event, pursuant to 21 U.S.C. § 331(a)(2), the offense becomes a felony. Because Geborde was charged with failure to register, his intent to defraud or mislead must relate to his failure to register, and not to some other possible wrongdoing. The government presented no evidence from which a jury could have inferred that in failing to register Geborde had the intent to defraud or mislead. Accordingly, we reverse Geborde's conviction and sentence as to Count One, and we remand to the district court with instructions to enter a judgment of conviction for misdemeanor failure to register and to re-sentence Geborde accordingly.

As for Counts Two through Eight, misbranding of a drug under 21 U.S.C. § 331(k), the government failed to prove an essential statutory element of the offense—that the misbranding occurred while the drug was "held for sale." The undisputed evidence established that Ge-borde did not sell the GHB or hold it for sale; he gave it away, free of charge, to the ultimate users with whom he socialized. Accordingly, we reverse Geborde's convictions of Counts Two through Eight and remand with directions to enter a judgment of acquittal as to those counts.

## I. Facts

In the fall of 1995, Geborde was a 25-year old aspiring disc jockey and musician from Los Angeles who moved to Yucca Valley, California and soon became something of a Pied Piper among a group of young locals. According to the testimony, he was admired as a deejay and regarded as cool. One morning in October, 1995, following a party the prior evening, a number of young people gathered at one of their homes. Geborde drove his van to the front of the residence and made a batch of GHB. He did this by mixing, in a bucket, sodium hydroxide and a common industrial solvent called gammabutyrolactone. Sodium hydroxide, more commonly known as caustic soda beads and lye, is an ingredient of such products as Drano. Geborde tasted the substance, added water, and then poured the concoction into an unlabeled five-gallon water bottle. Geborde told his teenage friends that they needn't worry about law enforcement because the stuff looked like water and, if questioned, they could say that it was water. These facts form the basis of Count One, operating an unregistered drug manufacturing facility.

On seven different occasions between September, 1995 and January, 1996, Geborde gave his homemade GHB to his young friends, usually at parties. In regard to Count Two, for example, while at a party, Geborde offered a 14 year old girl a cocktail of GHB, which he called "G," and vodka. The girl had never heard of "G" and asked if it was gin. He said that it was not, but did not tell her what it really

was. She drank it and got sick to her stomach shortly thereafter. With regard to Count Three, Geborde and several of the youngsters went to a party in an abandoned house in the desert. Geborde offered them GHB. He said it was not illegal and was all natural. Several of the girls drank a capful from what appeared to be an unlabeled water bottle. He told one of the 16–year–olds that GHB was "all natural," that "it wasn't bad for you," and that it was actually "good for you." He told another girl that GHB would make her feel "stoned but happy." The facts with regard to the Counts Four through Eight are not materially different; in each instance, at a party or in some other social setting, Geborde gave his teenage groupies GHB, either straight or mixed with vodka. The GHB was stored in water bottles, half-gallon milk jugs or vodka bottles, none of which bore labels identifying the contents as GHB. Count Eight is the instance in which Geborde, while partying with his young friends at a place called Giant Rock in North Landers, California, gave GHB to 15–year–old Lucas Bielat. Bielat died from ingesting a toxic level of GHB. It is undisputed, however, that Geborde never sold or offered to sell GHB.

Geborde was charged with one count of operating an unregistered drug manufacturing facility in violation of 21 U.S.C. § 331(p)[1] and seven counts of misbranding of a drug held for sale after receiving it in interstate commerce in violation of 21 U.S.C. § 331(k).[2] The indictment further alleged, pursuant to 21 U.S.C. § 333(a)(2), that Geborde committed these offenses with the intent to defraud or mislead. A simple violation of § 331 is a misdemeanor, punishable by a maximum of one year imprisonment and/or a maximum fine of $1,000. 21 U.S.C. § 333(a)(1) (1995). However, if the person commits a § 331 "violation with the intent to defraud or mislead," the crime becomes a felony carrying a maximum sentence of three years imprisonment and/or a $10,000 fine. 21 U.S.C. § 333(a)(2).[3]

A jury convicted Geborde of all counts and found the intent to defraud or mislead. The district court sentenced Geborde to 41 months: 5 months on count one to run consecutive to 36–month concurrent sentences for counts two through eight. We

---

**1.** 21 U.S.C. § 331(p):

The following acts and the causing thereof are prohibited:

\* \* \* \* \* \*

(p) The failure to register in accordance with section 360 of this title, the failure to provide any information required by section 360(j) or 360(k) of this title, or the failure to provide a notice required by section 360(j)(2) of this title.

**2.** 21 U.S.C. § 331(k):

The following acts and the causing thereof are prohibited:

\* \* \* \* \* \*

(k) The alternation, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, or cosmetic, if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded.

**3.** 21 U.S.C. § 333:

(a) Violation of section 331 of this title: intent to defraud or mislead

(1) Any person who violates a provision of section 331 of this title shall be imprisoned for not more than one year or fined not more than $1,000, or both.

(2) Notwithstanding the provisions of paragraph (1), if any person commits such a violation after a conviction of him under this section has become final, or commits such a violation with the intent to defraud or mislead, such person shall be imprisoned for not more than three years or fined not more than $10,000, or both.

have jurisdiction of this appeal under 28 U.S.C. § 1291.

## II. Sufficiency of the evidence

 Geborde challenges the sufficiency of the evidence supporting his convictions for operating an unregistered drug manufacturing facility with the intent to defraud or mislead, and for misbranding of a drug. On appeal, we view the evidence in the light most favorable to the prosecution, and must affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Wright,* 215 F.3d 1020, 1025 (9th Cir.), *cert. denied,* 531 U.S. 969, 121 S.Ct. 406, 148 L.Ed.2d 313 (2000).

### A. Count I—Operating an unregistered drug manufacturing facility in violation of 21 U.S.C. §§ 331(p) and 333(a)(2)

Geborde concedes that there is sufficient evidence showing that he operated an unregistered drug manufacturing facility in violation of 21 U.S.C. § 331(p). The point of contention, however, is whether the government proved that Geborde's intent in failing to register—as opposed to, say, his intent in distributing the substance in unlabeled bottles—was to defraud or mislead as required by § 333(a)(2). The government offered plenty of evidence that Geborde misrepresented the safety and the nature of the substance in the course of distributing the GHB to his teenage friends. He told them that "G" was good for them when it wasn't, he kept it in unlabeled bottles, and he never disclosed what it truly was.

 The problem is that Geborde was not charged in Count One with *distributing* GHB with the intent to defraud or mislead. He was charged with failing to register as a drug manufacturing facility with the intent to defraud or mislead. To prove a case of felony failure to register, the government had to prove that the *failure to register* was committed with fraudulent intent. It is not enough for felony treatment that Geborde may have intended to evade the watchful eyes of local or federal authorities. That is already implicit in simple failure to register, which is itself an evasion of the FDA enforcement process. For felony failure to register, Congress additionally required that the failure to register be activated by the specific intent to defraud or mislead. There was no evidence of Geborde's intent in failing to register, assuming he even knew he was required to register.

 To reiterate, Geborde may have had the intent to mislead those to whom he distributed GHB, but that is not what he was charged with in Count One. Accordingly, Geborde's conviction for felony operating an unregistered drug manufacturing facility must be reversed. However, the evidence is sufficient to sustain a conviction for the misdemeanor version of the offense, and therefore, the district court is directed to enter an amended judgment of conviction and to re-sentence Geborde accordingly.

### B. Counts II through VIII—Misbranding of drugs held for sale after receipt in interstate commerce in violation of 21 U.S.C. §§ 331(k) and 333(a)(2)

In Counts Two through Eight, Geborde was charged with misbranding of a drug after receiving it in interstate commerce, in violation of 21 U.S.C. § 331(k). The indictment also contained an allegation under 21 U.S.C. § 333(a)(2) that the offense was committed with the intent to defraud or mislead, enhancing it to a felony.

21 U.S.C. § 331(k) provides as follows:

The following acts and the causing thereof are prohibited:

\* \* \* \* \* \*

(k) The alternation, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, or cosmetic, *if such act is done while such article is held for sale (whether or not the first sale)* after shipment in interstate commerce and results in such article being adulterated or misbranded.

(Emphasis added.)

The government does not contend that Geborde actually sold GHB or held it for sale in the usual sense. Rather, the government's position is that "held for sale" means "not for personal consumption." At the government's request, the district court instructed the jury as follows:

"All articles, including drugs, not intended for the sole consumption by the producer are deemed to be held for sale under the Federal Food, Drug and Cosmetic Act. If a producer possesses a drug with the intent of selling or giving it away to others, even if she or he also possess it in addition for his or her own personal consumption, he or she holds the drug for sale."

In support of this position, the government relies primarily on several cases arising in the context of the regulation of adulterated commercial products.

The government's main case is the 1911 decision in *Hipolite Egg Co. v. United States*, 220 U.S. 45, 31 S.Ct. 364, 55 L.Ed. 364 (1911), in which the Supreme Court held that eggs intended for use by a commercial bakery rather than for sale in unbroken packages were nevertheless "held for sale." The government also relies on *United States v. Torigian Labs. Inc.*, 577 F.Supp. 1514 (E.D.N.Y.), *aff'd* 751 F.2d 373 (2d Cir.1984), a case in which the defendants' laboratory received intra-ocular lenses from their manufacturer in order to sterilize, package, and label them before returning the lenses to the manufacturer for distribution to customers. The court rejected the defendants' argument that *the lab* wasn't holding the lenses for sale, but was just sterilizing and packaging them for the manufacturer. Both *Hipolite Egg* and *Torigian Labs.* clearly involve commercial transactions, commercial actors, and commercial products. The eggs and lenses, respectively, were products held for sale, in one form or another, to consumers who would buy them. They were not homemade items distributed free of charge to friends.

The government also cites *Chaney v. Heckler*, 718 F.2d 1174 (D.C.Cir.1983) (*rev'd on other grounds, Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985)). This odd case was brought by prison inmates in Texas and Oklahoma seeking to require FDA regulation of lethal drugs used in executions. The court held that the drugs were subject to regulation even though they were not "held for sale" to the condemned inmate, described by the court as the "ultimate consumer." "Inquiry into the statutory scheme and legislative history of the FDCA and subsequent amendments reveals a specific congressional intent to prevent misbranding of drugs at each stage of the distribution process from manufacturer to patient." *Chaney*, 718 F.2d at 1181. *Chaney* sheds little light on the problem before us because it, too, involved the distribution of commercial drugs by an entity (to wit, a prison) that was in the business of administering them to the "ultimate consumer."

■ All of the FDCA "held for sale" cases of which we are aware involve individuals or entities who are in the business

of distributing or handling the drug or product in question. We know of no case, much less a criminal case, in which the "held for sale" language of the FDCA has been applied to an individual who gave away a homespun drug or product in a wholly non-commercial setting.

 It is true that the FDCA was "designed primarily to protect consumers from dangerous products ... from the moment of their introduction into interstate commerce all the way to the moment of their delivery to the ultimate consumer." *United States v. Sullivan*, 332 U.S. 689, 696, 68 S.Ct. 331, 92 L.Ed. 297 (1948). However, it is also true that the Supreme Court has cautioned that the statute should not be read so expansively that it includes criminal behavior "plainly not embraced within the language of the statute." *Kordel v. United States*, 335 U.S. 345, 349, 69 S.Ct. 106, 93 L.Ed. 52 (1948). Due process requires fair notice of what is illegal. *Aponte v. Gomez*, 993 F.2d 705, 708 (9th Cir.1993) It seems clear to us that the phrase "held for sale" plainly contemplates a sale. But even if "held for sale" could somehow mean something else, in a criminal case due process requires that ambiguity be resolved against the government. *Liparota v. United States*, 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985); *United States v. United States Gypsum Co.*, 438 U.S. 422, 436, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). The government did not have to prove that Geborde sold GHB; it would have been sufficient if the government proved that Geborde simply held the drug for sale. In this case, the government proved neither, and therefore, Geborde's convictions of Counts Two through Eight must be reversed.

By way of epilogue, we note that in March, 2000, pursuant to the Hillory J. Farias and Samantha Reid Date–Rape Drug Prohibition Act of 1999, GHB is now listed as a Schedule I controlled substance. Pub. L. No. 106–172, 114 Stat. 7 (2000), codified at 21 U.S.C. § 841. Law enforcement authorities can now prosecute GHB cases just as they do other illegal drug cases, under the Drug Abuse Prevention and Control statutes, 21 U.S.C. § 801 et seq.

## III. Conclusion

With respect to Count One, we reverse Geborde's felony conviction and sentence, and we remand to the district court with instructions to enter a judgment of conviction for the misdemeanor violation of 21 U.S.C. § 331(p) and to re-sentence the defendant accordingly. With respect to Counts Two through Eight, we reverse the convictions and remand to the district court with instructions to enter a judgment of acquittal.

REVERSED and REMANDED

Opinion by Judge SILVERMAN.