**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gary Duane ELLIS, Defendant–Appellant.**

**No. 01–4273.**

United States Court of Appeals, Fourth Circuit.

Argued: Oct. 31, 2002.

Decided: April 21, 2003.

---

**ARGUED:** Melissa Windham Fried-
man, Roanoke, Virginia, for Appellant.

Barbara Tolliver Wells, United States Department of Justice, Washington, D.C., for Appellee. **ON BRIEF:** Anthony F. Anderson, Roanoke, Virginia, for Appellant. John Brownlee, United States Attorney, Anthony P. Giorno, Assistant United States Attorney, Roanoke, Virginia, for Appellee.

Before NIEMEYER, WILLIAMS, and MICHAEL, Circuit Judges.

Affirmed by published opinion. Judge NIEMEYER wrote the opinion, in which Judge WILLIAMS joined. Judge MICHAEL wrote a dissenting opinion.

## OPINION

NIEMEYER, Circuit Judge:

Gary Duane Ellis was convicted, on three counts, of (1) conspiring to manufacture and sell a misbranded drug, gamma hydroxybutyrate ("GHB"), in violation of 18 U.S.C. § 371, (2) misbranding GHB, in violation of 21 U.S.C. §§ 331(a), (k) and 332(a)(2); and (3) failing to register, with an intent to defraud or mislead, a kitchen laboratory operated for the purpose of manufacturing GHB, in violation of 21 U.S.C. §§ 331(p) and 333(a)(2). The district court sentenced Ellis to imprisonment for one year and one day.

On appeal, Ellis contends that there was insufficient evidence from which a jury could conclude that, on Count III, his failure to register his kitchen laboratory was *with an intent to defraud or mislead*, the element that distinguishes felonious failure to register from the lesser included misdemeanor offense. He also contends that the district court's jury instruction on Count III giving the definition of "intent to defraud and mislead" created a conclusive presumption that unconstitutionally shifted the burden of persuasion to Ellis.

For the reasons that follow, we affirm.

## I

In August 1999, the Food and Drug Administration ("FDA") commenced an investigation of individuals suspected of manufacturing and distributing GHB in the Roanoke, Virginia area.

GHB, which was banned by the FDA in 1990, is most commonly used as a party drug for its intoxicating or euphoric effects, although some use it believing it to be effective in stimulating muscle growth, promoting sleep, or enhancing libido. It is easy to make, requiring simply the mixing and heating of gamma butyrolactone ("GBL"), which is a commercial solvent, and sodium hydroxide, which is a caustic soda known as the main ingredient in some liquid drain openers. GHB is usually ingested in liquid form in doses that would fill a soda bottle cap. While it causes a feeling of euphoria, it can also result in dizziness, vomiting, urinary incontinence, seizures, coma, and even death. As a "drug" within the meaning of the Federal Food, Drug, and Cosmetic Act, the manufacture and distribution of GHB is subject to FDA regulation.

During its investigation, the FDA discovered that Ellis was purchasing large quantities of GBL and sodium hydroxide from chemical manufacturers in his own name and through the names of others. David Reedy, an individual cooperating with the FDA in its investigation, made controlled purchases from Ellis in October 1999, leading to the issuance of a search warrant for the search of Ellis' home. During that search, FDA agents discovered a plastic container containing sodium hydroxide under Ellis' kitchen table; pots and pans and a Pyrex mixing bowl that Ellis admitted were used to manufacture and process GHB; three five-gallon containers of GBL and three one-gallon milk jugs of GHB in Ellis' bedroom; and additional containers of GBL in Ellis' living

room closet and in the bedroom closet of Ellis' housemate. The agents also discovered printed material and Internet documents in the living room and in his housemate's bedroom, some of which detailed GHB's legal status. One article indicated that GHB was not "scheduled" as a controlled substance by the federal Drug Enforcement Agency or by Virginia but that its sale was subject to "current FDA regulations and policy." Additional articles related to the health effects of GHB and its legality.

During the course of the search, Ellis cooperated, admitting that he had been making GHB in a pot on his stove since 1997, using a recipe that he obtained over the Internet. He stated that he had purchased GBL from Chemsolv, Inc., a chemical manufacturing company, and from friends who procured it for him at his request. Ellis stated that he used GHB personally, distributed it to friends, and sold it to out-of-state persons who he believed sold it to others. The FDA estimated that the total quantity of GBL involved in this case was enough to manufacture approximately 200,000 individual doses of GHB.

A grand jury indicted Ellis in three counts. Count I charged him with conspiracy to manufacture, hold for sale, dispense, and deliver GHB that was adulterated or misbranded, with the intent to defraud or mislead, in violation of 18 U.S.C. § 371 and 21 U.S.C. §§ 331(k) and 333(a)(2). Count II charged Ellis with introducing GHB that was misbranded into interstate commerce, with the intent to defraud or mislead, in violation of 21 U.S.C. §§ 331(a), (k) and 333(a)(2). Finally, Count III charged Ellis with failing to register, with the intent to defraud or mislead, a laboratory in which he manufactured GHB, in violation of 21 U.S.C. §§ 331(p) and 333(a)(2). Each of these

counts contained a lesser included misdemeanor offense differentiated by the absence of the element that the offense be committed with the intent to defraud or mislead.

The jury convicted Ellis of misdemeanors on Counts I and II and of a felony on Count III, concluding as to that count that Ellis failed to register his kitchen drug laboratory *with the intent to defraud or mislead.* The district court sentenced Ellis to a six-month term of imprisonment on each of Counts I and II and to a one-year and one-day term of imprisonment on Count III, all sentences to run concurrently.

On appeal, Ellis challenges only his conviction on Count III, alleging (1) that the evidence was insufficient to prove that he acted with the intent to defraud or mislead and (2) that the district court's jury instruction defining intent to defraud or mislead created a conclusive presumption that unconstitutionally shifted the burden of persuasion to him.

II

In challenging the sufficiency of the evidence, Ellis measures the government's evidence against a narrow statutory interpretation of 21 U.S.C. § 333(a)(2) that forms the core of his argument. He concedes that he failed to register an establishment that manufactured GHB, but he argues that "there was no evidence that in failing to register, [he] acted with the intent to defraud or mislead.... Clearly, any intent to ·defraud or mislead *must have been related to the underlying act of failing to register* with the FDA." (Emphasis added). Explaining his statutory argument, Ellis states:

> The most that the United States might argue is that the act of failing to register itself is sufficient proof of intent to defraud or mislead. However, that

argument must be rejected. The statute prohibits as a misdemeanor failure to register with the FDA. In order to elevate the crime to a felony there must be evidence of an intent to defraud or mislead in addition to the evidence that proves the misdemeanor. Otherwise the "intent to defraud or mislead" language would be meaningless.

The evidence that the government offered, Ellis argues, proves at most that he intended to mislead his chemical supplier, Chemsolv, Inc., but that conduct, he asserts, "has no nexus to the defendant's failure to register with the FDA."

Because the violation of 21 U.S.C. § 333(a)(2) becomes a felony only when the conduct is undertaken "with the intent to defraud or mislead," we begin by focusing on the meaning of this statutory language.

Under 21 U.S.C. § 360(b) and (c), any person operating an establishment that engages in the "manufacture, preparation, propagation, compounding, or processing of a drug" is required to register his name and place of business with the Secretary of Health and Human Services. This registration is the mechanism by which the Secretary is advised of premises subject to the Secretary's regulation and that a Department official must inspect periodically. *See* 21 U.S.C. § 360(h). The registration also serves to provide the Secretary with a list of drugs at the registered location, the authority for their marketing, and a copy of their labeling. *See id.* § 360(j). The registration is available for inspection by "any person so requesting." *Id.* § 360(f). Thus, registration required by § 360(b) and (c) serves a disclosure role necessary for the effective regulation of drugs—a regulation that is undertaken through the FDA to protect the public's health and safety against the distribution of impure, adulterated, illicit, and noxious articles.

*See United States v. Dotterweich,* 320 U.S. 277, 280, 64 S.Ct. 134, 88 L.Ed. 48 (1943).

Because the § 360 registration requirement is fundamental to the FDA's ability to regulate drugs, the Federal Food, Drug, and Cosmetic Act provides a range of remedies for failing to register, including criminal penalties. The failure to register, regardless of the person's knowledge and intent, is a misdemeanor punishable by not more than one year in prison and/or a fine of not more than $1,000. 21 U.S.C. § 333(a)(1). But if the failure to register is committed "with the intent to defraud or mislead," the violation becomes a felony punishable by not more than three years in prison and/or a fine of not more than $10,000. *Id.* § 333(a)(2).

■ In light of the function of the registration requirement in the FDA's regulatory oversight scheme, we conclude that "intent to defraud or mislead" under § 333(a)(2) is shown when the evidence demonstrates that the defendant has deliberately frustrated the purpose for which registration is required under § 360(b) and (c), i.e., to provide the required information to the FDA and to facilitate public knowledge of the defendant's operations. The inquiry, therefore, is whether the defendant designed his conduct to avoid the regulatory scrutiny of the FDA. Thus, while the inadvertent failure of an ordinarily dutiful and law-abiding operator to register its drug-manufacturing establishment gives rise only to a misdemeanor violation, a defendant's affirmative efforts to conceal his drug-making establishment from the FDA can serve as evidence of an intent to defraud or mislead, as provided in § 333(a)(2). *See United States v. Arlen,* 947 F.2d 139 (5th Cir.1991); *United States v. Bradshaw,* 840 F.2d 871 (11th Cir.1988).

■ With this understanding of the statute, we turn to whether the evidence

that the government offered against Ellis in this case was sufficient to permit a reasonable jury to find beyond a reasonable doubt that Ellis failed to register with the FDA "with the intent to defraud or mislead," in violation of 21 U.S.C. § 333(a)(2).

The government introduced extensive evidence demonstrating that Ellis actively concealed his operations from the regulatory scrutiny of the FDA. Evidence was presented to show that Ellis was aware that his manufacturing of GHB violated FDA regulations, and this evidence included articles and Internet documents in Ellis' home that detailed the legal status of GHB and indicated that it was subject to "current FDA regulations and policy." Ellis also knew of the dangers of GHB, as was evident both from the written materials discovered in his home and also from the testimony of a witness who stated that Ellis had discussed with him a CNN program on the dangers of GHB and had personally experienced and observed its effects. This witness also testified that Ellis once stated he was aware that, although GHB was once available over the counter, the FDA had "pulled it off the shelves" in 1990. Ellis' concern for federal regulation was manifested by his extensive efforts to keep secret his purchases of chemicals, his manufacturing process, and his distribution of GHB. Some of Ellis' acquaintances testified at trial that Ellis had asked them to purchase GBL and sodium hydroxide for him because Chemsolv had begun to ask Ellis questions about his purchases and Ellis was afraid to make further purchases from Chemsolv himself. There was testimony that "as a cover" Ellis purchased GBL from Chemsolv in the name of his father's car lot and that, if he were to be asked questions about his purchases, he would lie, saying that he was using the GBL as a floor cleaner at the car lot. There was evidence that after a re-port of GHB usage at a local high school, Ellis accused his acquaintance of distributing GHB carelessly; he "worried [that] someone was going to blow it for him" and "cause ... suspicion on him for manufacturing GHB." Ellis was also concerned that another acquaintance would "ruin it for him"—"it" meaning the "making ... and selling" of GHB—by "run[ning] his mouth." There was testimony that if a person came to Ellis' apartment door while he was making GHB, Ellis would "get rid of" the visitor because he did not want anyone to know what he was doing. Finally, testimony from FDA agents demonstrated that the containers of GHB in Ellis' bedroom were concealed with a towel and that other containers of GHB were stored out of sight in his closets.

From this evidence, a rational jury could have concluded beyond a reasonable doubt that Ellis knew that the manufacture and distribution of GHB was regulated by the FDA; that GHB was potentially harmful to the public; and that Ellis deliberately withheld disclosure and concealed his operations from government regulation in order to frustrate that regulation and deny the government of the knowledge that registration would otherwise provide. If believed, this evidence would readily establish that Ellis failed to register and subject his operation to FDA regulation with the intent to defraud or mislead the FDA and ultimately the public. *See Arlen,* 947 F.2d 139; *Bradshaw,* 840 F.2d 871. *But see United States v. Geborde,* 278 F.3d 926 (9th Cir.2002). Indeed, this evidence leaves little room for Ellis to argue that his failure to register was innocent or even negligent.

Accordingly, we reject Ellis' argument that the evidence was insufficient to support his conviction and affirm the district court's denial of Ellis' motion for judgment of acquittal.

### III

■ Ellis also contends that the district court erred in instructing the jury relating to the definition of "intent to defraud or mislead." He argues that the district court's instruction in this case could have been interpreted by the jury as setting forth a "conclusive presumption" that shifted the burden of persuasion to the defendant on the element of "intent to defraud or mislead," in violation of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). In *Sandstrom*, the Supreme Court reviewed a jury instruction on deliberate homicide, which stated that "the law presumes that a person intends the ordinary consequences of his voluntary acts" and which was given without any instruction that the presumption could be rebutted by the defendant's simple presentation of some evidence. *Id.* at 517, 99 S.Ct. 2450. The Court held that such an instruction violated the constitutional requirement set forth in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), that the government carry the burden of proving every element of a criminal offense beyond a reasonable doubt. *Sandstrom*, 442 U.S. at 520–24, 99 S.Ct. 2450.

Ellis argues that in this case the district court violated *Sandstrom* in its jury instruction on the intent requirement by stating that intent "can be established by proof beyond a reasonable doubt that the defendant took affirmative steps in an effort to conceal his activity from government agencies, such as the [FDA]." The full instruction, as relevant, reads as follows:

All of the counts in the indictment allege that the defendants violated or agreed to violate provisions of the Federal Food, Drug and Cosmetic Act, with the intent to defraud or mislead. To act with intent to defraud means to act with a specific intent to deceive or cheat, ordinarily, for the purpose of either causing some financial loss to another or bringing about some financial gain to one's self. It is not necessary, however, to prove that anyone was, in fact, defrauded, as long as it is established beyond a reasonable doubt that the defendant acted with the intent to defraud or mislead.

You are further charged that to act with intent to mislead means to act with the specific intent to create a false impression by misstating, omitting or concealing facts. It is not necessary, however, to prove that anyone was, in fact, misled, as long as it is established beyond a reasonable doubt that the defendant acted with the intent to mislead.

A defendant acts with the intent to defraud or mislead under the Federal Food, Drug and Cosmetic Act if the defendant acts with the intent to defraud or mislead either the government or the consumers of the defendant's product. To act with the intent to defraud or mislead the government means to act with the specific intent to interfere with or obstruct a lawful government function by deceit, craft or trickery, or at least by means that are dishonest. *Intent to defraud or mislead the government can be established by proof beyond a reasonable doubt that the defendant took affirmative steps in an effort to conceal his activities from government agencies, such as the Food and Drug Administration, charged with regulating those activities.*

\* \* \*

You are further charged that the defendants could be in violation of the law, even if they did not act with the intent to defraud or mislead. Therefore, if you find that the government has proven

each of the elements of the offense charged but did not prove beyond a reasonable doubt that the defendants acted with the intent to defraud or mislead, you should indicate that you are finding that they have violated the law without the intent to defraud or mislead.

(Emphasis added). Ellis focuses on the highlighted portion of the instruction to argue that the jury could have understood the instruction to *require* a finding of intent to defraud if it found evidence of the concealment described in the instruction. This argument, however, simply fails to accommodate the language of the instruction.

The instructions set forth no conclusive presumption of any kind that would implicate the constitutional error found in *Sandstrom*. The court never told the jury to apply a conclusive presumption to find the intent element of the offense based solely on a factual finding of concealment. The instruction merely informed the jury of the types of conduct that it might find to fulfill the requirement of proving intent. In describing the evidence that "can" support a finding of intent to defraud or mislead, the court did not demand that the intent element be found satisfied as a consequence of concealment evidence. Rather, it instructed the jury permissively, stating that concealment, the most common example of intent to defraud or mislead, "can" show an intent to defraud or mislead. Moreover, the court repeatedly made clear that the government always bore the burden of proving all facts and elements of the crime beyond a reasonable doubt, including intent to defraud or mislead. Accordingly, we find Ellis' argument without merit.

For the foregoing reasons, Ellis' conviction on Count III of the indictment finding him in violation of 21 U.S.C. § 333(a)(2) with intent to defraud or mislead is

*AFFIRMED.*

MICHAEL, Circuit Judge, dissenting:

Although GHB is now a controlled substance under the federal drug trafficking statute (the Drug Abuse Prevention and Control Act), 21 U.S.C. §§ 801–971, it was not at the time Gary D. Ellis was caught making the stuff in 1999. Thus, to prosecute Ellis, the government had to charge him with several violations of the Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 301–399, a consumer protection act designed to prevent harmful foods, drugs, and cosmetics from entering the market. As one court has said, "[t]he problem [in a case like Ellis's] is that the FDCA was not designed to deal with the [manufacture and] distribution of homemade substances." *United States v. Geborde,* 278 F.3d 926, 928 (9th Cir.2002). Our job today is to decide to what extent "the square pegs of [Ellis's] conduct can be pounded into the round holes of the FDCA." *Id.* I respectfully dissent because one aspect of Ellis's conduct—his failure to register his kitchen laboratory with the FDA—does not fit within the FDCA's felony category. Because there is no evidence that Ellis failed to register "with the intent to defraud or mislead" the FDA, *see* 21 U.S.C. § 333(a)(2), I would vacate his felony conviction on this count and direct the district court to record a conviction for a misdemeanor.

This appeal turns on what evidence the government had and did not have against Ellis. There is considerable evidence that Ellis was aware the FDA regulated GHB and that he was aware his production and distribution of GHB violated FDA regulations. There is also evidence that Ellis took steps to conceal his activities. For example, he asked trusted acquaintances

to buy raw materials (GBL and sodium hydroxide) for him, and he developed a cover story to explain why he had bought these materials himself. There is no evidence, however, that Ellis knew he was required to register his kitchen laboratory with the FDA or that he failed to register with the intent to mislead the FDA.

Ellis was charged with three counts, all keyed to 21 U.S.C. § 331:(1) conspiracy to commit offenses prohibited by 21 U.S.C. § 331, namely, manufacturing and selling a misbranded drug in violation of § 331(k); (2) introducing misbranded GHB into interstate commerce in violation of §§ 331(a) and (k); and (3) failing to register a laboratory in violation of § 331(p). Section 331 provides a list of over thirty prohibited acts, ranging literally from (a) to (z) and (aa) to (gg). *See* 21 U.S.C. §§ 331(a)-(gg). The penalties for violations of § 331 are found in 21 U.S.C. § 333. A simple violation of § 331 is a misdemeanor punishable by up to one year in prison or a maximum fine of $1,000, or both. 21 U.S.C. § 333(a)(1). However, when a defendant violates a provision of § 331 "with the intent to defraud or mislead," he may be convicted of a felony and sentenced to a maximum of three years in prison or a maximum fine of $10,000, or both. 21 U.S.C. § 333(a)(2). Here, the government sought felony convictions against Ellis on all three counts. The jury returned misdemeanor convictions on the first two counts (conspiracy and selling misbranded GHB), but it returned a felony conviction for Ellis's failure to register his kitchen laboratory with the FDA. Ellis concedes that there is sufficient evidence to show that he operated an unregistered drug laboratory in violation of § 331(p). He argues, however, that the evidence is not sufficient to prove that his failure to register was attended by any intent to defraud or mislead the FDA, which is required for

a felony conviction under § 333(a)(2). I agree.

A person may be convicted for a misdemeanor violation of any of the many provisions of § 331 without any knowledge or intent of wrongdoing. *See* 21 U.S.C. § 333(a)(1); *United States v. Abbott Labs.;* 505 F.2d 565, 573 (4th Cir.1975) (noting that § 333(a)(1) "prescribes a crime of which scienter is not a necessary element"); *see also United States v. Park,* 421 U.S. 658, 672–73, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975). To be convicted of a felony, however, a person must "commit[ ] ... a [§ 331] violation with the intent to defraud or mislead." 21 U.S.C. § 333(a)(2). Our court recognizes that "fraud is a crime requiring specific intent." *United States v. Mandel,* 591 F.2d 1347, 1363 n. 11 (4th Cir.1979). The majority concludes that specific intent may be proven when the defendant acts with the broad purpose of evading the regulatory scrutiny of the FDA, regardless of whether he is aware of his particular § 331 violation. Such a generalized intent is not sufficient to establish a specific intent to defraud or mislead for a felony conviction under § 333(a)(2). Rather, as the circuits that have considered the issue hold, a § 333(a)(2) felony requires "a *knowing* violation [of a § 331 provision] *with the specific intent* 'to defraud or mislead.'" *United States v. Mitcheltree,* 940 F.2d 1329, 1350 (10th Cir.1991) (emphasis added). *See also Geborde,* 278 F.3d at 930 (reversing a felony conviction under § 333(a)(2) because "[t]here was no evidence of [the defendant's] intent in failing to register, assuming he even knew he was required to register"); *United States v. Arlen,* 947 F.2d 139, 143 (5th Cir.1991) ("[T]he government's evidence is sufficient to make out a violation of this section where it shows that the defendant *intentionally* violated § 331 *with the specific intent* to defraud or mislead an identifi-

able government agency.") (emphasis added). In other words, "[b]ecause 'knowledge of the essential nature of the alleged fraud is a component of the intent to defraud,' a defendant cannot act with intent to mislead or defraud under § 333(a)(2) without some knowledge of" his specific § 331 violation. *Mitcheltree*, 940 F.2d at 1349 (quoting *United States v. Hiland*, 909 F.2d 1114, 1128 (8th Cir.1990)). A felony conviction thus requires proof of an intent to defraud or mislead that is *"connected to"* a specific § 331 violation. *Id.See also Hiland*, 909 F.2d at 1128 (rejecting the government's argument "that a § 333(a)(2) violation consists of a completed misdemeanor plus an intent to defraud or mislead that need not be connected to the predicate violation of § 331"). In this case, then, to convict Ellis of a felony violation of § 331(p), the government had to prove (1) that he had some knowledge that he was required to register his kitchen laboratory with the FDA *and* (2) that he failed to register with the intent to defraud or mislead the agency. *See Mitcheltree*, 940 F.2d at 1351.

Under the majority's interpretation of § 333(a)(2), a defendant in this circuit can now be convicted of intentionally defrauding or misleading the FDA even though he was unaware that he was violating a specific regulatory requirement and even though he did not violate the requirement with the intent to avoid detection by the FDA. According to the majority, as long as the defendant is aware that he is in some measure subject to FDA regulation and he takes some steps to avoid scrutiny by the FDA, he has acted "with the intent to defraud or mislead" the agency with respect to *any* of the many acts prohibited by § 331. In other words, under the majority's interpretation of § 333(a)(2), a defendant who is unaware that he has violated a particular provision of § 331 can nevertheless be convicted of a felony as

long as he has done something to avoid regulatory scrutiny by the FDA; the violation itself does not have to be committed with the intent of avoiding detection. This interpretation improperly moves the carefully drawn line between misdemeanors and felonies under § 333(a), leaving little on the misdemeanor side. *Cf. Arlen*, 947 F.2d at 143. Because I would not relax the intent requirement for a felony under § 333(a)(2), I respectfully disagree with the majority.

It appears that the jury had some difficulty in figuring out the extent to which Ellis's illicit drug trafficking fit the provisions of the FDCA. There was evidence for the jury to find, though it did not, that Ellis specifically intended to defraud or mislead the FDA when he manufactured and sold misbranded GBH in violation of §§ 331(a) and (k). The government offered evidence that Ellis was aware that the FDA regulated GHB and that his production and distribution of the substance violated FDA regulations. The government also offered evidence that Ellis took measures, such as recruiting acquaintances to buy raw materials for him, in order to avoid detection by regulatory authorities. Thus, the jury could have concluded that Ellis had some knowledge that his production and distribution of GHB violated the law *and* that he engaged in these prohibited activities with the intent to avoid detection by the FDA. The same is not true for Ellis's failure to register his kitchen laboratory.

The government did not offer any evidence that Ellis failed to register his laboratory, as required by § 331(p), for the purpose of defrauding or misleading the FDA or that he even knew of the registration requirement. As I have said, the evidence showed that Ellis knew he should not make GHB and knew he should not sell it. The evidence did not, however,

demonstrate that Ellis knew he should register his home laboratory with the FDA. When there is no intentional violation of a particular regulatory requirement, there cannot be a specific intent to defraud or mislead. Accordingly, the evidence was insufficient to support Ellis's felony conviction on count III for failure to register under 21 U.S.C. § 331(p). I would therefore vacate his felony conviction on this count. However, because the evidence is sufficient to sustain a misdemeanor conviction on this count under § 333(a)(1), I would direct the district court to enter an amended judgment reflecting the appropriate conviction and sentence.