[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11012
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cr-00287-AKK-CSC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TONY JAMES LEFLORE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(June 28, 2016)

Before MARTIN, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Tony Leflore appeals his convictions for conspiracy to possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846; unlawful use of a communication facility, in violation of 21 U.S.C. § 843(b), (d)(1); and possession with intent to distribute cocaine powder and crack cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).  After careful consideration and a thorough review of the record, we affirm.

## I.

A grand jury indicted Leflore on numerous counts arising out of an alleged drug trafficking ring.  The charges against Leflore in the superseding indictment included one count of conspiracy to distribute powder cocaine, crack cocaine, and marijuana; 21 counts of knowing and intentional unlawful use of a communication facility (a cellular telephone) in the commission of the drug offenses; three counts of possession with the intent to distribute cocaine; and one count of money laundering.

Before trial, Leflore filed a motion to suppress, raising two arguments.  First, Leflore contended that all evidence seized during a search of his residence should be suppressed, despite the issuance of a warrant, because the officers entered his residence on October 17, 2013 at 10:14 p.m., while the warrant reflected that it was not issued until 10:31 p.m. that night.  Second, Leflore urged the court to suppress

2

evidence obtained through a court-authorized wiretap, arguing that normal investigative procedures would have worked as well as a wiretap.[1]

The government opposed the motion.  It asserted that the warrant, which was issued along with five others at about the same time to search properties associated with Leflore and his alleged coconspirators, reflected an incorrect time of issuance. The government offered as evidence the warrants issued to search two of the properties, showing the issuing times as 9:21 p.m. and 9:27 p.m.  As regards the wiretap applications, the government contended that the affidavits in support, which it offered into evidence, contained extensive discussions of alternative investigation techniques and showed why these alternative measures were inadequate and thus why the wiretap was necessary.

The magistrate judge held an evidentiary hearing.  Regarding the warrant, the judge considered the testimony of Hubert Douglas Walters, Jr., a Task Force Officer with the United States Drug Enforcement Administration who was part of a team assigned to search Leflore's residence.  Walters testified that he and his team waited until they received confirmation that a warrant had issued before entering and searching Leflore's residence.  In addition to the two warrants the government

---

[1] Leflore also asserted that statements in the wiretap application were misleading and deceptive, but he failed to identify specific misleading statements until he filed amended objections to the magistrate judge's report and recommendation.  Likewise, Leflore did not challenge the wiretap applications for lack of probable cause until his objections to the report and recommendation and even then only made a passing reference to this issue.  The district court overruled the objections.

offered, the magistrate judge also took judicial notice of the warrants for three other properties, which he found were issued at 9:35 p.m., 9:40 p.m., and 9:45 p.m. Based on this evidence, the magistrate judge found that the time on the warrant at issue was "simply a mistake" and that the actual time of issuance was 9:31 p.m. Doc. 85 at 8.[2]  For this reason, the magistrate judge recommended denying the motion to suppress evidence seized as a result of the search of Leflore's residence.

As regards the wiretap, the court considered the detailed affidavits attached to the wiretap applications, which described the techniques that had previously failed, appeared unlikely to succeed, or were too dangerous to employ.  For example, according to the affidavits, authorities sifting through Leflore's trash risked compromising the investigation because Leflore lived on a cul-de-sac in a neighborhood with houses close together, making it more likely that someone would observe the search and tell Leflore.  The authorities also lacked confidential sources who could purchase drugs from Leflore.  And although undercover officers were helpful in investigating low-level drug dealers, authorities were unable to employ these officers to investigate Leflore directly.  Nor had pole cameras, air surveillance, or telephone toll analyses been successful at gaining the information officers needed.  Moreover, the objective of the investigation, according to the affidavits, went beyond simply capturing Leflore; the authorities wished to topple

---

[2] Citations to "Doc." refer to docket entries in the district court record in this case.

4

the entire organization to stop the flow of cocaine. At the suppression hearing, Walters confirmed this information and maintained that wiretaps were necessary to fulfill the goals of the investigation.

The magistrate judge recommended denying this portion of the motion to suppress as well. The judge found that law enforcement's goal was to dismantle the organization and that Walters had adequately explained why the various alternative techniques of surveillance—searching trash, employing confidential informants, and installing and monitoring pole cameras, for example—were insufficient as compared to wiretaps.

The district court adopted the magistrate judge's recommendations over Leflore's objections[3] and denied the motion to suppress.

Trial commenced on September 15, 2014 with testimony lasting five days. The government presented the testimony of over 20 witnesses, including one of Leflore's coconspirators, Leonardo Fuller, and one of Leflore's buyers, Stanley Parker. Fuller testified that he sold cocaine and marijuana for Leflore and that he witnessed Leflore sell cocaine for cash. Fuller also identified Leflore's voice on a government wiretap recording and confirmed that Leflore was discussing marijuana. For his part, Parker testified that he purchased cocaine from Leflore on

---

[3] Leflore filed three sets of objections to the magistrate judge's recommendation, two before the district court adopted the recommendation and one after the district court denied Leflore's motion to suppress. The district court overruled all of Leflore's objections.

5

numerous occasions for three and half years since 2008, paying over $30,000 for 30 kilograms of the drug. Parker also explained that he purchased from Leflore, in four or five transactions, a total of about 100 pounds of marijuana from 2008 through 2011. Parker then identified Leflore's and another coconspirator's voice on a wiretap recording and confirmed that Leflore avoided using the word "cocaine" on the telephone.

Walters also testified for the government. He described intercepted telephone calls connecting Leflore to the drug operation. Walters identified items recovered after the search of Leflore's home and vehicle, including one of the telephones authorities had wiretapped, about $10,000 in cash found in a storage closet, $3,100 in cash found in the center console of Leflore's vehicle, and a key to another vehicle, which contained 11.5 kilograms of cocaine. On cross-examination, Leflore's attorney asked Walters whether Leflore had used the word cocaine during any of the wiretapped telephone calls. Walters reported that he never heard the word cocaine on the wiretap. When pressed by Leflore's counsel to identify what "conversation [Walters] heard . . . about illicit drug activity," Walters responded that on "numerous telephone calls between Mr. Leflore" and a coconspirator, "both reference[d] money or cocaine as a thing." Doc. 293 at 189. Leflore's attorney lodged no objection to the testimony he elicited.

6

After the close of the government's case, Leflore moved for judgment of acquittal as to all counts. The court denied Leflore's motion. Leflore then called Walters to testify briefly, after which, the defense rested. The jury returned a verdict of guilty on count 1, conspiracy to possess with intent to distribute cocaine and marijuana, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846; counts 13, 19, and 24, possession of cocaine powder and crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and 16 counts of unlawful use of a communication facility (a cellular telephone), in violation of 21 U.S.C. § 843(b), (d)(1). The jury rendered a verdict of not guilty on all remaining counts, including the money laundering count.

Leflore moved for judgment of acquittal and, in the alternative, for a new trial. The district court denied the motion. The district court sentenced Leflore to 292 months' imprisonment. This appeal followed.

## II.

Leflore raises four arguments on appeal. First, he argues that the district erred in denying his motion to suppress evidence seized during the search of his home. We review the denial of a motion to suppress under a mixed standard, reviewing the district court's findings of fact for clear error and its application of the law to those facts *de novo*, while construing the facts in the light most favorable to the prevailing party below. *United States v. Lewis*, 674 F.3d 1298,

1302-1303 (11th Cir. 2012). A district court's choice between two permissible views of the evidence cannot be clear error. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985). We defer to the district court's factual determination "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (internal quotation marks omitted).

The district court did not err in denying the motion to suppress regarding the evidence seized during a search of Leflore's home. The district court found that the time of issuance noted on the face of the warrant authorizing the search was a scrivener's error; the warrant was actually issued at 9:31 p.m., before authorities searched Leflore's home. This finding was not clearly erroneous. The sequential order of the five other warrants presented by the same affiant on the same night for the same investigation, all of which were issued before the search of the home, and the testimony that law enforcement did not enter Leflore's home until after receiving confirmation at 10:14 p.m. that the warrant had been issued, adequately support the district court's factual finding. The search of Leflore's home, therefore, was pursuant to a valid warrant, and the evidence seized as a result was admissible at trial.

8

Second, Leflore argues that the district court erred in denying his motion to suppress evidence obtained as a result of the wiretaps because the wiretap applications failed to show that normal investigative procedures were insufficient and that wiretaps were necessary, as required under 18 U.S.C. § 2518(1)(c). Section 2518(1)(c) requires a wiretap application to contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). "The 'necessity' requirement in § 2518 ensures that law enforcement does not use electronic surveillance when less intrusive methods will suffice." *United States v. Perez*, 661 F.3d 568, 581 (11th Cir. 2011). "Section 2518 does not foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted; however, it does require the Government to show why alternative measures are inadequate for this particular investigation." *Id.* (internal quotation marks and citation omitted); *accord United States v. Van Horn*, 789 F.2d 1492, 1496 (11th Cir. 1986) ("The affidavit need not, however, show a comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves.").

The district court did not err in concluding that the wiretap applications sufficiently showed why alternative measures were inadequate for the

9

investigation.  The affidavits submitted in support of the wiretap applications

contained extensive discussions of alternative investigative techniques, including a

search of Leflore's trash, undercover drug purchases, and pole cameras.  Further,

the affidavits adequately explained why those techniques were too risky or

ineffective.  For example, to succeed in not only nabbing Leflore but also toppling

the enterprise, the affidavits showed, and Walters confirmed, that authorities could

not rely on confidential sources or undercover drug purchases.  And even if other

techniques may have garnered limited success, "[t]he partial success of alternative

investigative measures . . . does not necessarily render electronic surveillance

unnecessary."  *Perez*, 661 F.3d at 581.  We agree with the district court that the

government satisfied its burden under § 2518 to show the necessity of electronic

surveillance.  Accordingly, the district court did not err in denying the motion to

suppress.[4]

Third, Leflore contends that the district court erred by allowing Walters to

testify that, in wiretapped conversations, Leflore referred to cocaine as a "thing."

To the extent this constituted error, Leflore invited it, and thus it is not reversible.

---

[4] In his appellant's brief, Leflore makes a passing reference to two additional arguments. He first references *Franks v. Delaware*, 438 U.S. 154 (1978), asserting the general proposition that deliberately false or misleading statements in a wiretap application constitute grounds for suppression of evidence, but he fails to argue that the wiretap applications actually contained misleading statements.  He then states without elaboration that the wiretap applications lacked probable cause.  Because Leflore simply makes passing reference to these points without mounting an argument or citing authority in support, we deem these issues abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014).

"In the context of a district court's decision to admit certain evidence, the accepted rule is that where the injection of allegedly inadmissible evidence is attributable to the action of the defense, its introduction does not constitute reversible error." *United States v. Jernigan*, 341 F.3d 1273, 1289 (11th Cir. 2003) (alteration adopted) (internal quotation marks omitted); *accord United States v. Sarras*, 575 F.3d 1191, 1216 (11th Cir. 2009) (holding that, because the defense counsel's question elicited the response about which counsel complained on appeal, any error was invited error and thus unreviewable).  Leflore's attorney pressed Walters to confirm that Leflore avoided using the term "cocaine" on telephone calls. Walters obliged, but clarified that he understood Leflore's use of the term "thing" to refer to cocaine or money.  The admission of this defense-elicited testimony does not constitute reversible error.

Finally, Leflore argues that the evidence was insufficient to support a guilty verdict on the conspiracy charge, and thus the district court should have granted his motion for judgment of acquittal.  "We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *United States v. Edouard*, 485 F.3d 1324, 1349 (11th Cir. 2007) (internal quotation marks omitted).

To sustain a conviction for conspiracy to distribute drugs in violation of 21 U.S.C. § 846, "the government must prove that 1) an agreement existed between two or more people to distribute the drugs; 2) that the defendant at issue knew of the conspiratorial goal; and 3) that he knowingly joined or participated in the illegal venture." *United States v. Reeves*, 742 F.3d 487, 497 (11th Cir. 2014) (internal quotation marks omitted). "[P]articipation in a criminal conspiracy need not be proved by direct evidence; a common purpose or plan may be inferred from a development and collocation of circumstances." *Id.* (internal quotation marks omitted). "It is also well established in this Circuit that where there are repeated transactions between participants buying and selling large quantities of illegal drugs, that may be sufficient to find the participants were involved in a single conspiracy to distribute those drugs." *Id.* Moreover, "the uncorroborated testimony of a co-conspirator or accomplice is sufficient to prove guilt beyond a reasonable doubt." *Craig v. Singletary*, 127 F.3d 1030, 1044 (11th Cir. 1997) (collecting cases); *accord United States v. Broadwell*, 870 F.2d 594, 601 (11th Cir. 1989).

The district court did not err in denying Leflore's motions for judgment of acquittal. The testimony and other evidence presented at trial, including wiretap recordings and the testimony of a coconspirator and a drug purchaser, was sufficient to support the convictions. *See Broadwell*, 870 F.2d at 601. Leflore

12

argues that Fuller's and Parker's testimony was incredible.  But it is well-established that weighing the credibility of a witness is exclusively within the province of the jury.  *See United States v. Hernandez*, 743 F.3d 812, 815 (11th Cir. 2014).  We must "assume that the jury made all credibility choices in support of the verdict."  *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009).  Only where the testimony is "incredible or insubstantial on its face,"—that is, where the testimony addressed "facts that [the witness] physically could not have possibly observed or events that could not have occurred under the laws of nature"—will we second-guess the jury's credibility determination.  *United States v. LeQuire*, 943 F.2d 1554, 1562 (11th Cir. 1991) (internal quotation marks omitted).  Under this standard, Fuller's and Parker's testimony was not incredible.[5]

Finally, Leflore asserts that an excerpt from the transcript of a sentencing hearing involving one of the alleged coconspirators—in which the district court opined that the record in *that* case failed to support the conclusion that the defendant conspired with Leflore—shows that the evidence in *his* case was insufficient to support the conspiracy conviction.  Our review of the sufficiency of the evidence, however, is limited to "evidence presented at trial."  *United States v. LeCroy*, 441 F.3d 914, 924 (11th Cir. 2006); *accord United States v. Orrego-*

---

[5] We also reject Leflore's argument that the government's failure to call as witnesses other coconspirators—whom he claims may have supported the defense—establishes the insufficiency of the evidence against him.  Leflore has offered no support for this argument, and we find none.

13

*Martinez*, 575 F.3d 1, 8 (5th Cir. 2009) ("[R]eview of sufficiency challenges is confined to evidence presented at trial." (internal quotation marks omitted)).  What the district court thought of evidence in a different case is irrelevant to our analysis.

For the foregoing reasons, we reject Leflore's arguments on appeal and affirm his convictions.

**AFFIRMED.**